UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PALERMO VILLA, INC., <br><br> Plaintiff, <br><br> v. <br><br> I.J. WHITE CORPORATION, <br><br> Defendant/Third Party Plaintiff, <br><br> v. <br><br> KUHLMAN INCORPORATED, <br><br> Third Party Defendant. | Case No. 21-CV-516-JPS <br><br><br> **ORDER** |

1.  **INTRODUCTION**

On February 17, 2023, the Court issued a written order which addressed Plaintiff Palermo Villa, Inc.'s ("Palermo's") and Defendant I.J. White Corporation's ("IJW") competing motions in limine regarding interpretation of their contract. ECF No. 84. Therein, the Court held (1) that the parties' contract was "ambiguous as to which Terms and Conditions are integrated into" the parties' contract and (2) that "evidence of which party may have been contractually responsible for determining dwell time for the rising crusts is not relevant to the issues for trial or, if relevant, will cause unnecessary delay and confuse the issues." *Id.* at 13.[1]

---

[1]For purposes of brevity and since IJW has not objected to the Court's summary of the underlying facts in this case—only the legal conclusions drawn therefrom—the Court incorporates by reference those facts as laid out in the now-challenged Order. *See* ECF No. 84 at 3–10. The Court also adopts the designations

IJW now moves the Court to reconsider both of those above-stated findings or, in the alternative, to certify the issues for interlocutory appeal. ECF No. 85. The motion is now ripe for adjudication, as IJW has filed its principal brief, ECF No. 86, Palermo's has filed its brief in opposition, ECF No. 87, and IJW's 14-day window for filing a reply brief has expired. *See* Civ. L.R. 7(c). For the reasons stated below, the motion will be denied.

2. **LEGAL STANDARDS**

    2.1 **Motion for Reconsideration**

    "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit v. CBI Indus.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (citation omitted). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.,* 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Such motions are disfavored and should be "rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

    2.2 **Certification of Issue for Interlocutory Appeal**

    "When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial

---

of specific documents (e.g., "Letter," "IJW Quote T&Cs," "Palermo's T&Cs," etc.) set forth therein. *See id.*

ground for difference of opinion and that immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing." 28 U.S.C. § 1292(b). Put differently, "there are four criteria guiding a district court's decision whether to certify such an appeal: 'there must be a question of law, it must be controlling, it must be contestable, and its resolution must promise to speed up the litigation.'" *Dekeyser v. Thyssenkrupp Waupaca, Inc.*, No. 08-C-0488, 2015 WL 13932158, at *1 (E.D. Wis. Apr. 10, 2015) (quoting *Ahrenholz v. Bd. of Tr. of Univ. of Ill.*, 219 F.3d 674, 675 (7th Cir. 2000)).

3. ANALYSIS

    3.1 Ambiguity of the Parties' Contract

IJW first argues the Court committed a manifest error of law when it found the parties' contract was fairly susceptible of two different constructions and that this ambiguity would have to be resolved by a jury. ECF No. 86 at 5–15. IJW's theory is essentially that the Court gave too much credence to Palermo's proffered interpretation of the parties' contract and that, in adopting Palermo's proffered interpretation as *one* reasonable construction of the contract, the Court disregarded the "cardinal rules" of contract interpretation under Wisconsin law. *Id.* at 6–7.[2] IJW sets out several

---

[2]Under Wisconsin law, the goal of contract interpretation is to discern the intent of the parties; the interpreting court presumes the parties' intent is expressed by the words in the contract. *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 866 N.W.2d 679, ¶ 34 (Wis. 2015). Therefore, the interpreting court looks first to the language of the contract, construing that language according to its plain and ordinary meaning; if that language is unambiguous, the contract language must be construed according to its literal meaning. *Id.* at ¶¶ 35, 37. If that language is ambiguous—fairly susceptible of more than one meaning—the court may look to extrinsic evidence to discern the intent of the parties. *Id.* at ¶ 36. Additionally, if

chains of reasoning in support of this theory. The Court, having considered each, finds none has merit.

IJW claims the Court failed to construe the parties' use of the lowercase phrase "terms and conditions" in the Letter according to its plain meaning as "a general contractual 'provision' or 'stipulation'" and as defined in the Palermo's T&Cs' definition of the parties' contract. ECF No. 86 at 8–11. This, IJW argues, resulted in the Court improperly assuming that this phrase in the Letter could indicate the parties' intention that the IJW Quote T&Cs were included among those "terms and conditions" the Letter indicated were repudiated. *Id.* It seems IJW takes issue with the Court's acknowledgement of the very common-sense conclusion that reasonable people, and reasonable businesspeople such as those involved in this transaction, might understand a phrase like "no other terms and conditions apply" to mean exactly what it says it means: that only one set of terms and conditions (however that phrase is capitalized) governs the parties' agreement. IJW is free to argue at trial that the two business entities involved in this transaction would have followed its hyper-technical understanding of the phrase, but the Court is not now bound to adopt this

---

two or more alternative meanings are available, and one meaning gives effect to all provisions in the contract while another renders some provision superfluous, the former meaning is "preferred." *Id.* at ¶ 37.

Palermo's takes issue with IJW's characterization of what is and is not considered a "cardinal rule" of contract interpretation under Wisconsin law. ECF No. 87 at 4–5. It states that only the final statement in the above-enumerated list of interpretive principles has been characterized as a "cardinal rule." *Id.* IJW does not appear to have mischaracterized the black-letter interpretive principles or methodology guiding contract interpretation, as set forth above. *See* ECF No. 86 at 6. It appears Palermo's argument boils down to taking issue with IJW's rhetoric; this is not legally persuasive.

understanding as the only possible one. *See Ash Park*, 866 N.W.2d at ¶ 34 (defining plain language to mean "what a reasonable person would understand the words to mean under the circumstances" or, in a business contract, how the language would "be understood 'by persons in the business to which the contract relates'" (citations omitted)).

IJW also takes issue with the Court's consideration of extrinsic evidence—the fact that the text of the contract incorporates the Quote by reference but the June 28 package of documents included only the product specification sheet portion of the Quote, and did not include the IJW Quote T&Cs appended to the Quote earlier in negotiations—in recognizing Palermo's suggested interpretation as a possible meaning of the contract. ECF No. 86 at 9.[3] But the Letter specifically calls out the Quote *as attached* to the June 28 package of documents. ECF No. 84 at 7–8 (reproducing Letter, which states that it "sets forth our understanding regarding [the Spiral Freezer] . . . *as more fully described on the following attached documents*[.]" (emphasis added)). It is therefore reasonable to assume, from the text of the Letter, which is a component of the parties' contract, that the Quote was incorporated only to the extent it appeared in that package of documents. Perhaps the Court should have stated this more clearly in its prior Order;

---

[3]IJW has not made a convincing argument that considering extrinsic evidence was altogether improper in doing what the parties were asking the Court to do: to resolve a substantive legal question through the vehicle of an evidentiary ruling. *See* ECF No. 84 at 10, n.4; *see also* Fed. R. Evid. 104 (in deciding questions of admissibility, "the court is not bound by evidence rules"). IJW's argument that the "written decision reflects the influence of extrinsic evidence" when as a matter of contract interpretation law its "conduct had no place in the debate," ECF No. 86 at 13–15, is therefore unpersuasive.

in any event, it does so now. *See also* ECF No. 84 at 15 ("The June 28 package of documents also does not append the IJW Quote T&Cs anywhere.")

IJW further argues that accepting Palermo's suggested interpretation of the contract as a reasonable reading of the contractual language requires the Court to rewrite the contract or would render portions of the contract superfluous. ECF No. 86 at 11–13. Specifically, IJW says recognizing Palermo's suggested interpretation requires the Court to read in limitations on the extent to which the Quote was incorporated into the contract. *Id.* at 11. This argument turns on IJW's prior argument that the contract cannot support a reading that the IJW Quote T&Cs were repudiated, which as the Court has already discussed, fails. If the language repudiating all other terms and conditions (including the IJW Quote T&Cs) *is* in fact the meaning a jury gives to the contract, then any argument that the parties would need to contract around express limitations on the incorporation of the Quote becomes moot. Similarly, IJW's argument that recognizing Palermo's suggested interpretation requires the Court to read language into the hierarchy provision is unavailing. ECF No. 86 at 12. The Court did indeed note in its prior Order that "IJW has the upper hand in this respect." ECF No. 84 at 19. But recognizing IJW's suggested interpretation in this respect by no means rules out Palermo's suggested interpretation; the only conclusion to be drawn from these dueling interpretations is that the contract is, as previously held, ambiguous.

Because IJW has not carried its burden to demonstrate the Court made a "manifest error" by disregarding, misapplying, or failing to recognize controlling precedent, *Oto*, 224 F.3d at 606, its motion for

Page 6 of 9

Case 2:21-cv-00516-JPS   Filed 04/20/23   Page 6 of 9   Document 88

reconsideration as to this issue is denied. Further, the Court will not certify the issue for interlocutory appeal. Since the parties' contract is ambiguous, the question currently presented is one of fact, not law, so the issue fails on the first prong of the certification test. *See Dekeyser*, 2015 WL 13932158, at *1.

### 3.2 Relevance of Evidence of Responsibility for Dwell Time

Similarly, the Court cannot agree with any of IJW's arguments that it erred when it found IJW's arguments that Palermo's was contractually responsible for determining dwell time would be irrelevant at trial.[4] First, IJW's argument that the Court erred in making a relevancy determination is misguided. ECF No. 86 at 16–17. This position does not square with the fact that IJW itself chose to press the contract interpretation issue through a motion in limine—a vehicle by which parties seek pretrial rulings as to admissibility, inherently implicating relevancy determinations. The Court is not persuaded it made a manifest error of law in exercising its discretion to make a relevancy determination at this stage of the proceedings. *See* Fed. R. Evid. 401, 402; *Gage v. Metro. Water Reclamation Dist. of Greater Chi.*, 365 F. Supp. 2d 919, 926 (N.D. Ill. 2005) ("District judges have broad discretion in ruling on motions in *limine*.").

---

[4]IJW inquires "whether all evidence to support its defenses based on the inaccurate dwell time are excluded, or just the allocation of that risk in the parties' contract." ECF No. 86 at 20, n.4. IJW has not explained, functionally, what would be the difference between those prospective exclusions, or whether the evidence it believes would fall into the former of the two categories is subject to one of the parties' outstanding pretrial motions. The Court directs IJW back to its prior Order, stating IJW would not be entitled to present "any argument, questioning, or suggestion by IJW that Palermo's was contractually responsible for determining an accurate dwell time[,]" ECF No. 84 at 20, but otherwise reserves answering this question until a later time.

Second, IJW argues that its representations on the Quote that it could provide a Spiral Freezer capable of freezing Palermo's rising crusts at the specified rate of 150 crusts per minute, to the specified temperature of 0°F ± 10°F, with a dwell time of about 25 minutes should not now be considered "legally binding representations" for which it can be held solely responsible. ECF No. 86 at 17. This argument does not hold water. The parties agreed, in the Quote, on an initial suggested dwell time of 25 minutes and did not specify which party was to perform testing, only that testing would confirm "actual freezing time and . . . system size and price." ECF No. 84 at 5. IJW's arguments on reconsideration rely heavily on the assertion that Palermo's *actual* testing of the dwell time was faulty. *See* ECF No. 86 at 21–22. But IJW has not explained why the parties' contract does not more clearly and specifically allocate responsibility in advance to Palermo's for testing and determining the dwell time, nor does it set out other relevant details that one might expect, such as a method of testing. In the absence of such language, it is not inappropriate to preclude IJW from arguing Palermo's bore contractual responsibility for testing and determining a dwell time.

Similarly, even if a jury were to find the IJW Quote T&Cs—in which Palermo's purportedly "agree[d] . . . that the residence time and air temperature in the system are sufficient to meet the customer's requirements," ECF No. 84 at 21—are integrated into the parties' contract, the contract still does not include express language that IJW would be excused if the Spiral Freezer did not ultimately meet the parties' agreed-upon specifications. If IJW intended to insulate itself completely from the

risk that the Spiral Freezer did not meet the agreed-upon specifications by shifting all responsibility onto Palermo's for determining one of those specifications, it could have allocated that risk more clearly. It did not do so, either in its own IJW Quote T&Cs, nor in the Palermo's T&Cs or anywhere in the June 28 package of documents or in any of the seven change order addenda to the parties' contract.

For the reasons stated above, the Court cannot conclude its prior ruling was in error and will deny the motion for reconsideration on this issue. The Court will not certify the issue for interlocutory appeal because evidentiary rulings, which require consideration of the factual context of a particular case, "are generally not immediately appealable." *Hurt v. Vantlin*, No. 314CV00092JMSMPB, 2020 WL 1310443, at *3 (S.D. Ind. Feb. 6, 2020) (quoting *United States v. Evans*, 113 F.3d 1457, 1458 (7th Cir. 1997)). Such is the case here.

Accordingly,

**IT IS ORDERED** that Defendant I.J. White Corporation's motion for reconsideration of the Court's written decision on the motions in limine, or alternatively for certification of the decision for interlocutory appeal, ECF No. 85, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 20th day of April, 2023.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge