**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| PALERMO VILLA, INC., <br><br>  Plaintiff, <br> v. <br><br> I.J. WHITE CORPORATION, <br><br>  Defendant/Third-Party Plaintiff, <br> v. <br><br> KUHLMAN INCORPORATED, <br><br>  Third-Party Defendant. | Case No. 21-CV-516-JPS <br><br><br> **ORDER** |

**1.   INTRODUCTION**

The above-captioned breach of contract case is currently set for a jury trial beginning on March 18, 2024. ECF No. 91. Plaintiff Palermo Villa, Inc. ("Palermo's") alleges in the Complaint that Defendant I.J. White Corporation ("IJW") breached its agreement with Palermo's by failing to provide a freezer capable of meeting Palermo's required specifications. ECF No. 1 at 4, 6. IJW disputes this contention. *See generally* ECF No. 6 (IJW's Answer and Affirmative Defenses). Further, IJW has filed a third-party complaint against Kuhlman Incorporated ("Kuhlman"), alleging that "the deficiencies in the [freezer's] performance are a direct and proximate result of deficiencies and/or defects in Kuhlman's design and manufacture of the refrigeration components for the [freezer]." ECF No. 17 at 2. IJW therefore brings third-party claims for indemnification and contribution against Kuhlman. *See generally id.*

On December 15, 2022, Kuhlman filed a motion in limine, ECF No. 52, and supporting brief[1] asking the Court to bar IJW "from presenting evidence at trial in support of its tort claims against Kuhlman for indemnification and contribution." ECF No. 53 at 1. Making this evidentiary determination requires the Court to rule on "whether there is a legal basis for the jury to assess comparative fault between IJW and Kuhlman for [Palermo's] claimed damages (if any) in the context of a breach of contract claim by Palermo against IJW." *Id.* at 1–2. The Court heard oral argument on the motion during a January 24, 2023 hearing (which primarily addressed a separate motion in limine). ECF Nos. 80, 81. Upon consideration of this material, the Court will grant in part and deny in part Kuhlman's motion on the terms stated in the balance of this Order and allow IJW's indemnification claim to proceed.

2. **RELEVANT FACTS**[2]

Palermo's contracted with IJW for an Ultra Series Blast Freezing System (the "Spiral Freezer"). Palermo's alleges that the IJW Spiral Freezer is not capable of meeting the specifications provided in the contract between Palermo's and IJW, namely to freeze 150 rising pizza crusts per

---

[1]The supporting brief lays out both Kuhlman's arguments for its motion together with IJW's arguments in opposition and is signed by the attorneys for each party. *See generally* ECF No. 53.

[2]The Court adopts the statement of facts from the supporting brief, ECF No. 53 at 2–3, with minor, non-substantive edits. Counsel for IJW signed the supporting brief and raises no dispute as to the facts as described and expert opinions as characterized therein. *See generally id.* Additional facts that were discussed during oral argument are included where applicable, with citations to the oral argument transcript, ECF No. 81; additional citations to the record are made where necessary.

minute down to a temperature range of 0°F ± 10°F. Palermo's is claiming damages for breach of contract and breach of express and implied warranties based on IJW's alleged failure to manufacture a Spiral Freezer capable of meeting those specifications.

Palermo's contracted with Kuhlman to provide refrigeration valves and piping for the Spiral Freezer. Palermo's makes no claims against Kuhlman. No contract exists between IJW and Kuhlman.

IJW's freezer and refrigeration expert, Robert Sterling ("Sterling"), has offered opinions critical of Kuhlman's work. Sterling opines that Kuhlman selected suction valves for the Spiral Freezer that are too small, which creates excessive pressure/temperature drop in the system. ECF No. 47-29 at 182–88 (Sterling deposition transcript); ECF No. 47-22 at 35, 40 (Sterling expert report). According to Sterling, this has several negative impacts on system performance, including preventing lower temperatures at the coil, and driving lower suction temperatures at the compressor, which results in subcooled liquid stacking inside the coil that can lower the coil's capacity to freeze Palermo's rising crust product in high volumes. ECF No. 47-29 at 182–83; ECF No. 47-22 at 35, 40. Sterling also recommends the installation of a P-trap to ensure that liquid stacking does not occur at the coil in the Spiral Freezer to lower the coil efficiency. ECF No. 47-29 at 184–85; ECF No. 47-22 at 38.

Importantly, a loss of coil operating capacity (i.e., thermal performance) impacts the ability of IJW's Spiral Freezer to meet the product specifications provided by Palermo's of freezing 150 rising crusts per minute within 21 to 25 minutes. ECF No. 47-29 at 159; ECF No. 47-22 at 33–

35. The failure to meet this specification is the basis of Palermo's loss of production claim of over $7,412,891. ECF 47-31 at 6.[3]

Sterling testified that even if Kuhlman changed the valves, piping and defrost cycle, the freezer still would not meet the specifications provided in the contract between Palermo's and IJW due to the inadequate dwell time provided by Palermo. ECF No. 47-29 at 182:20–83:4, 190:14–191:19. Sterling believes the valves, piping, and defrost cycle are "non-issues" with a longer dwell time (referring to the length of time a product must spend in a given freezer before reaching the desired product exit temperature range). *Id.* at 191:20-192:11. With larger valves and an adequate dwell time, Sterling believes "[e]nergy costs go down." *Id.* at 192:6-192:15.

Increased energy costs are not a part of Palermo's damages claim against IJW. ECF No. 47-30 at 9 (deposition of Palermo's corporate representative). Neither Brian Hudecek (Palermo's damages expert) nor Benjamin Darrah (IJW's damages expert) directly attributed any damages to Kuhlman. ECF No. 51-7 at 11 (Hudecek deposition transcript); ECF No. 51-11 at 2–3 (Darrah deposition transcript).

3. **LEGAL STANDARD**[4]

A district court has broad discretion in ruling on evidentiary questions presented before trial through motions in limine. *Jenkins v.*

---

[3] Sterling also criticizes Kuhlman for selecting a defrost cycle that did not include a dedicated soft hot gas step, which impacted the Spiral Freezer performance until being rectified by changes to include a "liquid push-out" step to the defrost cycle in November of 2020. ECF No. 47-22 at 36–38.

[4] Kuhlman's motion in limine functionally stands in for a dispositive motion. *See* ECF No. 53 at 4 (asking the Court to find that IJW's claims against Kuhlman are "improper under Wisconsin law and should be barred at trial").

*Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). "A district court's power to exclude evidence in limine derives from its authority to manage trials." *Allen v. Am. Cyanamid Co*, No. 11-CV-0055, 2021 WL 1092804, at *1 (E.D. Wis. Mar. 22, 2021) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

4.   **ANALYSIS**

Kuhlman moves for a finding that IJW's third-party contribution and indemnification claims against Kuhlman are either not legally valid under Wisconsin law or barred by the economic loss doctrine. *See generally* ECF No. 53. If the Court makes such a finding, Kuhlman argues, then no evidence as to these claims[5] should be admitted at trial. *See id.* at 1. Further,

---

Indeed, the questions the motion in limine presents would have been much better addressed on a motion to dismiss. The supporting brief does not state what legal standard ought to govern the Court's ruling on the motion.

[5]It seems likely that this evidence would primarily take the form of testimony from Sterling, who has opined that Kuhlman's work was at least partially responsible for the Spiral Freezer not meeting the specifications provided in the contract between Palermo's and IJW. Palermo's filed a Rule 702 motion to preclude Sterling from offering his opinions "about dwell times" or "whether it was within industry standards for IJW—as the Spiral Freezer manufacturer—to simply accept Palermo's dwell time testing as true and for IJW to not perform any

the parties have stipulated that if the Court grants Kuhlman's motion in limine, Kuhlman should be dismissed from the case. *Id.* at 1. The Court examines each of Kuhlman's arguments for exclusion of evidence (and accordingly for its dismissal from this case) in turn.

### 4.1 Legal Basis for IJW's Claims Against Kuhlman

The parties dispute whether IJW's asserted contribution and indemnification claims against Kuhlman "are valid on their face" as a matter of law. *Id.* at 5. Kuhlman's position focuses on the fact that no contract exists between IJW and Kuhlman: "[t]he parties' relationship and mutual obligations for the work at issue . . . were defined solely by their respective contracts (i.e., Palermo's agreement with IJW and Palermo's separate agreement with Kuhlman)" and so "[t]he obligations of each are governed by contract law." *Id.* at 4. IJW had no contract with Kuhlman nor were these two parties jointly liable to Palermo's, so it is improper for IJW to "seek[] indemnification and/or contribution from Kuhlman for sums which may be adjudged against IJW for its breaching its own contract with Palermo." *Id.* at 5. Further, IJW's contribution and indemnification claims against Kuhlman cannot proceed in tort because "Wisconsin [law] does not recognize a tort claim for negligent performance of a contract term." *Id.* at 6. Ultimately, Kuhlman argues, there is no legally valid basis for Kuhlman to be held responsible for damages arising from any breach of the contract between IJW and Palermo's.

---

additional testing or calculations to confirm IJW's Spiral Freezer could provide the required specifications within the requested dwell time." *See generally* ECF No. 60.

IJW argues that its indemnification and contribution claims against Kuhlman are both "legally valid and necessary in equity to ensure that IJW does not pay more than its fair share of fault for Palermo's claimed damages." *Id.* at 14. IJW seems to assert principles of equity and fairness—rather than any black letter law—as the primary legal bases for its claims. *Id.* at 15–16 ("If several parties each contribute to cause a breach and a single injury results, applying the current liability rules used in contract law would render an unduly harsh result. . . . In contrast, the application of comparative fault principles would result in greater fairness to all of the parties involved.").[6]

### 4.1.1 Contribution

The Court concurs with Kuhlman that IJW has not stated a contribution claim. "When no express agreement confers a right of contribution, a party's right to seek contribution against another is premised on two conditions: (1) the parties must be liable for the same obligation; and (2) the party seeking contribution must have paid more than a fair share of the obligation." *Kafka v. Pope*, 533 N.W.2d 491, 494 (Wis. 1995) (citing *Wait v. Pierce*, 210 N.W. 822, 823 (Wis. 1926)). IJW's claim fails on the first prong. It was not liable to Palermo's for the same obligation as

---

[6]Indeed, IJW explicitly acknowledges that, in a contract action, although "a plaintiff's total injury may have been the result of many factors in addition to the defendant's tort or breach of contract," "[g]enerally" the "defendant [must] pay damages equivalent to the total harm suffered." *Id.* at 14 (quoting *Reiman Assocs., Inc. v. R/A Advert., Inc.*, 306 N.W.2d 292, 301 (Wis. Ct. App. 1981)). IJW urges that comparative negligence principles should be applied instead to apportion fault and damages. *Id.*

Kuhlman; rather, the parties had different obligations to Palermo's under different contracts.

Even considering that "contribution, at its root, is an equity principle," *Kafka v. Pope*, 521 N.W.2d 174, 176 (Wis. 1994), IJW overstates the breadth of the equitable contribution remedy. "[Contribution] is founded upon the relationship between persons paying a 'just proportion,' not upon express contract." *Kafka*, 521 N.W.2d at 176. But IJW has provided no authority demonstrating that this "relationship" can be separate contracts with a common party. IJW and Kuhlman were working on the same project, broadly speaking, but IJW has not established that this qualifies as a common obligation for purposes of a contribution claim. The case law appears to require more. *See id.* at 176 ("Kafka and Pope both signed personal guarantees to the same debtor securing promissory notes for the business in which they were majority shareholders. The guarantees state that the undersigned would be 'jointly and severally liable.' By the very terms of the guarantees, they acknowledged their joint liability. . . . In addition to the contract, their relationship as officers and shareholders of the corporation supports the view that this was a joint venture they undertook together[.]").

The reality is that Palermo's—the only party here that had a contract with Kuhlman—elected not to sue Kuhlman in this matter. IJW suggests that the Court should nonetheless find that there was a "relationship" between it and Kuhlman for purposes of a contribution claim, seemingly asserting that an equitable contribution remedy allows it to do what Palermo's declined to do. In IJW's estimation, any other holding would be

inequitable. ECF No. 53 at 16 ("It would be highly unfair for IJW to shoulder damages that it did not cause, simply because it was a third party beneficiary of Palermo's contract with Kuhlman, instead of having a direct contractual relationship with Kuhlman."). But Wisconsin law does not support IJW's arguments in favor of recognizing such a contribution claim, and the Court will not accept IJW's invitation to do so solely as a matter of equity.[7]

Accordingly, because the Court discerns no legal basis for IJW's contribution claim against Kuhlman, the motion in limine will be granted in this respect. Any evidence pertinent to such a claim would be irrelevant and therefore must be excluded. Fed. R. Evid. 401. The Court will leave it to the parties to determine how to implement their stipulation with respect to the disposition of this claim. ECF No. 53 at 1.

### 4.1.2 Indemnification

Conversely, it appears that IJW can sustain an equitable indemnification claim against Kuhlman. A right of indemnification may arise as a matter of equity where "one party is exposed to liability for the wrongful acts of another" in which that party did not join. *See Est. of Kriefall v. Sizzler USA Franchise, Inc.*, 816 N.W.2d 853, ¶¶ 34, 41 (Wis. 2012) ("Indemnification can arise by contract or it can be based on equitable

---

[7]IJW also argues that a contribution cause of action is independent from the nature of the underlying cause of action. ECF No. 53 at 15 (citing *State Farm Mut. Auto. Ins. Co. v. Schara*, 201 N.W.2d 758, 759 (Wis. 1972)); *see also Schara*, 201 N.W. 2d at 760 ("The cause of action that accrues depend[s] not one whit upon the nature of the origin of liability. It is enough that a joint liability from whatever source exist."). But this does not help IJW because, as already discussed, IJW has not demonstrated a key element of a contribution claim—"liab[ility] for the same obligation." *Kafka*, 533 N.W.2d at 494.

principles. . . . Equitable indemnification seeks to shift the burden of payment to the party who, in equity, should pay." (citing *Greenlee v. Rainbow Auction/Realty Co., Inc.*, 582 N.W.2d 93, 96 n.4 (Wis. Ct. App. 1998); 1 Dan B. Dobbs, *Dobbs Law of Remedies: Damages, Equity, Restitution* § 4.3(4) (2d ed. 1993); and 63B Am.Jur.2d, *Products Liability* § 1879 (2012))). IJW's theory of why Kuhlman should be required to indemnify it for Palermo's damages—that some of Palermo's damages were "actually caused by the misconduct of Kuhlman," ECF No. 53 at 15; *see also generally* ECF No. 17 (IJW third-party complaint)—tracks the legal definition of equitable indemnification.

Kuhlman's argument that "[i]t would be against the equitable principles of indemnity for IJW to shift its own breach of contract burden with Palermo to Kuhlman," ECF No. 53 at 6, is unpersuasive. This argument focuses too much on the formal aspects of the relationships between the parties and not enough on the practical realities of the situation. Although IJW and Kuhlman were not in privity of contract and did not have a common obligation to Palermo's for purposes of a contribution claim, *see supra* Section 4.1.1, they were working on the same project, and their work impacted one another's. Without refrigeration (which Palermo's contracted with Kuhlman to provide), there could be no Spiral Freezer. Contracts aside, it is reasonable to expect that the refrigeration mechanism for the Spiral Freezer might have some impact on the Spiral Freezer's ability to perform to specifications. Whether that impact was positive, negative, or neutral is a fact question for the jury; Kuhlman essentially conceded this point when it declined to move for summary judgment on this issue. That

the refrigeration mechanism might have impacted the overall performance of the Spiral Freezer necessarily raises the question of who should pay if it did not. These basic truisms counsel in favor of allowing IJW's indemnification claim to proceed.

The Court is also not persuaded by Kuhlman's argument that "if Palermo chose to pursue a breach of contract claim against Kuhlman (which it did not), and IJW was allowed to seek indemnification . . . for its own breach, Kuhlman would then be forced to pay two separate line items of damages for the same breach (i.e., its own breach of contract with Palermo and IJW's breach of contract Palermo)." ECF No. 53 at 6. First, this is a self-serving and inaccurate characterization of both IJW's theory of the case and arguments for indemnification. As the Court understands IJW's theory of the case, IJW is not simply trying to raise a "phantom" breach of contract claim against Kuhlman that Palermo's could have, but didn't, raise. *Id.* at 7. IJW instead is arguing as follows: if IJW breached its contract with Palermo's, and Kuhlman's *negligence* was an underlying cause of why IJW is found to be in breach, then Kuhlman should reimburse IJW for those portions of Palermo's damages which are attributable to Kuhlman. *See* ECF No. 61 at 3–5 (joint final pretrial report) (framing as jury questions whether "Palermo's suffer[ed] damages because of [IJW's] breach, "[w]hat duty of care . . . Kuhlman owe[d] [IJW]," and "[w]hat damages, if any, were suffered by [IJW] as a result of Kulman's [sic] allegedly negligent performance of its contract with Palermo's").

Second, Kuhlman has not made a persuasive argument that there is no legal basis for IJW to bring a negligence claim against Kuhlman, or that

the parties' separate contracts with Palermo's prevent IJW from doing so. Kuhlman points out that Wisconsin does not recognize a tort of negligent performance of a contract. ECF No. 53 at 6–7 (citing *Dvorak v. Pluswood Wis., Inc.*, 358 N.W.2d 544 (Wis. Ct. App. 1984) and *McDonald v. Century 21 Real Est. Corp.*, 390 N.W.2d 68 (Wis. Ct. App. 1986)). This is true, but it misses the point. *McDonald*[8] is inapposite because it concerns whether there may be a tort cause of action between parties who are also parties to a contract. *See McDonald*, 390 N.W.2d at 70–71 ("Because the McDonalds have not pressed a contract claim [against the realtors], we must determine whether [the realtors] breached any common law duty owed to the McDonalds without regard to the terms of the listing contract."). That is not the situation here. Kuhlman has not explained why the lack of privity of contract between it and IJW and the fact that they both had separate contracts with Palermo's necessarily means that Kuhlman cannot have owed a duty of care to IJW. *See Teacher Ret. Sys. of Tex. v. Badger XVI Ltd. P'ship*, 556 N.W.2d 415, 421 (Wis. Ct. App. 1996) ("[I]ndemnification is an equitable doctrine that can apply even in the absence of contract." (citing *Brown v. LaChance*, 477 N.W.2d 296, 302 (Wis. Ct. App. 1991)).

Third, and most importantly, Palermo's did *not* sue Kuhlman, so any damages Kuhlman might have to pay in this matter would be paid to IJW only out of the total, and only if the jury finds that Kuhlman owed a duty to IJW in installing the refrigeration mechanism for the Spiral Freezer, and breached that duty, causing the Spiral Freezer not to meet the specifications

---

[8]*Dvorak* is insufficiently specific to the facts of this case. *See generally Dvorak*, 358 N.W.2d 544 (holding a breach of an employment contract is not a tort and generally discussing the distinction between breach of contract and tort actions).

in Palermo's and IJW's contract. In the end, carefully-crafted jury instructions and verdict forms will best guide the jury through these nuances.

For the reasons above, the Court finds that it is not proper, at this juncture, to preclude IJW from presenting evidence on its equitable indemnification claim against Kuhlman. Accordingly, Kuhlman's motion in limine will be denied in this respect.[9]

---

[9]The Court finds it worthwhile to briefly mention an issue the parties have not explored in their submissions. "The right to receive either indemnification [or] contribution requires a party seeking payment *to prove it has made a payment*, part or all of which the party seeks to recover." *Kriefall*, 816 N.W.2d, ¶ 35 (emphasis added) (citing *State Farm Mut. Auto. Ins. Co. v. Cont'l Cas. Co.*, 59 N.W.2d 425 (Wis. 1953) and *Brown,* 477 N.W.2d 296 and summarizing *Brown* as "recognizing that one element of the right to indemnification is payment by the party seeking the remedy")); *accord Kjellsen v. Stonecrest, Inc.*, 176 N.W.2d 321, 323 (Wis. 1970) (noting that indemnification requires a showing that "a person who, in whole or in part, *has discharged a duty* which is owed by him but which as between himself and another should have been discharged by another" (emphasis added) (quoting 41 Am.Jur.2d, *Indemnity* p. 688, sec. 2)); *cf. Brown*, 477 N.W.2d at 302 (finding third-party plaintiffs stated indemnification claim against third-party defendant where they had already settled with and paid plaintiff).

Here, IJW has made no payment to Palermo's; it is only asserting that, if not allowed to proceed on an indemnification claim, it could potentially have to pay those of Palermo's damages more properly attributable to Kuhlman. Even though no payment has yet been made, it would be inefficient to require IJW to bring its indemnification claim in a separate lawsuit after this one concludes. *See Teacher Ret. Sys.*, 556 N.W.2d at 421 ("[T]here is no reason to compel two trials: the first trial in which Skidmore's liability, if any, to Teacher Retirement System would be determined, and the second trial, following Skidmore's payment of any judgment, to determine which, if any, of the contractors were responsible for a portion of that judgment. This would be an unnecessary imposition of fees and costs on the parties as well as being a waste of legal resources.") (citing Wis. Stat. §§ 803.05; 802.07(3); and *Wait v. Pierce*, 210 N.W. 822, 823–25 (Wis. 1926)).

Page 13 of 15

Case 2:21-cv-00516-JPS    Filed 09/19/23    Page 13 of 15    Document 94

### 4.2 Economic Loss Doctrine

Kuhlman contends that IJW's claims are barred by the economic loss doctrine because the parties have contractual remedies available. ECF No. 53 at 7–14. IJW counters that the economic loss doctrine does not apply because there is no contract between it and Kuhlman. *Id.* at 17–18. For the reasons stated in the prior section, the Court concurs with IJW that the economic loss doctrine has no application to its equitable indemnification claim.

### 5. CONCLUSION

For the reasons and on the terms stated in this Order, Kuhlman's motion in limine is granted in part and denied in part. Given that the state of this case has shifted significantly in light of the Court's rulings on this and another motion in limine, ECF No. 84, and so that the parties may reassess whether they are willing to stipulate to any of the issues to which they previously could not agree, the Court will deny all remaining outstanding motions as moot. ECF Nos. 55, 59, 72. The parties must also update and resubmit their joint final pretrial report. The parties will have until **January 26, 2024** to file an updated joint final pretrial report and renew any Rule 702 motions and motions in limine.

Accordingly,

**IT IS ORDERED** that Third-Party Defendant Kuhlman Incorporated's motion in limine, ECF No. 52, be and the same is hereby **GRANTED in part and DENIED in part**;

**IT IS FURTHER ORDERED** that the outstanding motions in this case, ECF Nos. 55, 59, 72, be and the same hereby are **DENIED as moot**; and

**IT IS FURTHER ORDERED** that the parties meet and confer forthwith and submit an updated joint final pretrial report and any renewed and/or additional Rule 702 motions and motions in limine on or before **January 26, 2024.**

Dated at Milwaukee, Wisconsin, this 19th day of September, 2023.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge